**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1044**

---

PATRICK M. MARTIN,

Plaintiff - Appellee,

versus

MECKLENBURG COUNTY, Jointly and Severally,

Defendant - Appellant,

and

HARRY JONES, SR.; RICHARD JACOBSEN; JOHN
SKIDMORE; SUSAN HUTCHINS; JAMES O. COBB,

Defendants.

---

**No. 05-1065**

---

PATRICK M. MARTIN,

Plaintiff - Appellant,

versus

MECKLENBURG COUNTY, Jointly and Severally,

Defendant - Appellee,

and

HARRY JONES, SR.; RICHARD JACOBSEN; JOHN
SKIDMORE; SUSAN HUTCHINS; JAMES O. COBB,

                                          Defendants.

                    _____

Appeals from the United States District Court for the Western
District of North Carolina, at Charlotte.  Carl Horn, III,
Magistrate Judge.  (CA-02-466-3-H)

                    _____

Argued:  September 20, 2005          Decided:  October 26, 2005

                    _____

Before MICHAEL, MOTZ, and KING, Circuit Judges.

                    _____

Affirmed by unpublished per curiam opinion.

                    _____

Louis L. Lesesne, Jr., LESESNE & CONNETTE, Charlotte, North
Carolina, for Appellant/Cross-Appellee.  Jenny Lu Sharpe,
Charlotte, North Carolina, for Appellee/Cross-Appellant.

                    _____

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

In this Title VII retaliation case, Mecklenburg County appeals the district court's order denying the County's motions for judgment as a matter of law and for a new trial following an adverse jury verdict. Patrick M. Martin, a County employee, cross-appeals the district court's rulings as to back pay, front pay, attorneys' fees, and costs. For the following reasons, we affirm.

                              I.

Mecklenburg County employed Martin for twenty-seven years--from 1974 until his discharge in 2001. Since 1985, he served as the Director of the Department of Social Services' Youth and Family Services Division.

In 1997, an employee in his Division, Ruth Annette Harris, complained to County officials that she had been sexually harassed by her supervisor, Glenn Holland. An internal County investigation so found, and the County disciplined but did not discharge Holland.

In May 1997, after Harris filed an EEOC charge of sexual harassment against the County on the basis of Holland's harassment, the Department of Justice brought a Title VII lawsuit against the County on Harris's behalf, and Harris intervened in that suit. An article in the local newspaper about the Harris suit prompted a September 1999 conversation between Martin and John Skidmore, his immediate supervisor, in which Skidmore told Martin that Harris's

supervisor, Holland, "was up to his old tricks," that "Glenn [Holland] had been caught screwing in the building" in the past, and that Holland's boss at the time had failed to do anything about Holland's misbehavior.

On February 4, 2000, Martin telephoned Harris's private attorney, Thomas Roberts, to tell him about Martin's September conversation with Skidmore. Although Martin never reached Roberts, he left two phone messages that indicated he had information relating to the Harris suit. Roberts notified the DOJ's lead attorney about Martin's calls; the DOJ attorney then related this information to James O. Cobb, the County's lead counsel in the Harris suit.

On February 8, 2000, Cobb and Sandra Bisanar, the Deputy County Attorney, called Martin into Bisanar's office to determine what he knew about the Harris suit. Martin told Cobb and Bisanar that he had called Roberts and that he intended to tell Roberts about the substance of his September 1999 conversation with Skidmore. However, Martin lied in one respect--he said that Roberts had initially called him. Martin later testified that he found this meeting intimidating, and that he lied because he had "panicked." On May 16, 2000, Cobb and Bisanar again confronted Martin regarding his attempt to contact Roberts. Martin repeated the same information he had told them in the February meeting; he again lied about Roberts initiating contact.

In the days that followed, various County officials met repeatedly to discuss their concern about Martin. In one meeting on May 31, 2000, Skidmore's notes relate that the County planned to obtain the actual tape-recordings of Martin's telephone messages, and that there was a "need to get [Martin] on a conduct issue."

Shortly after this meeting, Martin began to suffer a series of disciplinary actions at work. He received two "written reminders" in June and August 2000. He also received a mediocre job rating for 1999, and the County's lowest job rating for 2000. These setbacks were unprecedented: Martin had never before been the subject of any formal disciplinary action, and his job performance had been rated exceptional for several years.

On January 3, 2001, Harris settled her suit with the County for $66,000. As part of the settlement, Harris gave the County Roberts's tape recordings of Martin's telephone messages. Roberts later testified that in the months leading up to the settlement, Cobb had persistently badgered Roberts for the tapes. Roberts further testified that by October 2000, Cobb had said that Martin would be discharged for disloyalty.

On January 11, 2001, after reviewing the tape recordings, Bisanar and Cobb confronted Martin for the last time. The day afterward, Martin was discharged by Richard Jacobsen, his supervisor, assertedly for having lied to Bisanar and Cobb about whether he had initiated contact with Roberts.

Pursuant to County policy, Martin appealed his termination to an Employee Review Panel, alleging that he was the victim of discriminatory retaliation. After a hearing in which several witnesses testified, the panel concluded on February 22, 2001, that Martin's termination should be reversed.

Harry Jones, the Mecklenburg County manager, reviewed the panel's ruling. Prior to making his decision, Jones had read Martin's grievance statement, a memo between Cobb and Bisanar, Martin's statement to the panel, and the panel's written ruling. On March 9, Jones reversed the panel's February 22 ruling and instead upheld Martin's discharge, even though County policy treated panel decisions on discrimination matters as "final and binding."

Martin then brought this action against the County and various officials. The County moved for summary judgment on all counts. The district court granted the motion with respect to Martin's state law conspiracy and wrongful discharge claims and his 42 U.S.C. § 1985 conspiracy claims against the individual defendants, but denied the County summary judgment as to Martin's First Amendment and Title VII claims against the County itself.

After trial, the jury rejected all of Martin's First Amendment claims, as well as his claim that the County disciplined him in retaliation for protected activity. The jury, however, found for Martin on his Title VII claim that the County discharged him in

retaliation for protected activity. The jury awarded Martin $300,000 in compensatory damages.

Martin then moved for back pay, front pay, attorneys' fees, and pre-judgment interest. Simultaneously, the County moved for judgment as a matter of law or a new trial, and challenged the $300,000 compensatory award as excessive. The district court granted, but reduced, Martin's request for back pay; denied Martin's request for front pay; granted Martin's request for prejudgment interest; and granted, but reduced, Martin's request for attorneys' fees. The court also denied the County's motions for judgment as a matter of law and a new trial, but agreed that the $300,000 compensatory award was excessive. Instead, it offered Martin a remittitur of $100,000, which Martin accepted.

The County appeals, and Martin cross-appeals.

## II.

### A.

The County first and principally argues that the district court erred in denying its motion for judgment as a matter of law on Martin's Title VII retaliation claim. We review the denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to Martin, the nonmoving party, Babcock v. BellSouth Adver. & Publ'g Corp., 348 F.3d 73, 76 (4th Cir. 2003), and drawing all reasonable inferences in his

favor. <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 645 (4th Cir. 2002). Judgment as a matter of law is appropriate only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). Review of a denial of judgment as a matter of law "is based on the complete trial record." <u>Chesapeake Paper Prods. Co. v. Stone & Webster Eng'q Corp.</u>, 51 F.3d 1229, 1236 (4th Cir. 1995).

In support of this argument, the County initially contends that Martin did not engage in conduct that Title VII protects. Title VII's participation clause prohibits employers from retaliating against employees who "participate[] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a) (2000).[1]

The parties do not agree on the exact "participating" conduct at issue here. There are three possible candidates: (1) Martin's phone calls to Roberts in February; (2) Martin's statements to Bisanar and Cobb in February and May about his conversation with Skidmore and his willingness to testify about the conversation in the Harris suit; and (3) in the same February and May

---

[1]Martin invokes the protection of Title VII's participation clause, not its opposition clause, which protects an employee's opposition to "any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a) (2000). The County's reliance on opposition-clause cases, like <u>Laughlin v. Metropolitan Washington Airports Auth.</u>, 149 F.3d 253 (4th Cir. 1998), is therefore misplaced.

conversations, Martin's lie that he had not initiated contact with Roberts.

Clearly, Title VII protects from retaliation Martin's phone calls to Roberts since they were made for the purpose of providing information in a pending Title VII proceeding--the Harris suit. "Title VII combats unlawful employment practices . . . principally through reliance on employee initiative." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 174-75 (2d Cir. 2005). Permitting retaliation based on an employee's sua sponte offer of information would impede voluntary participation by the most effective witnesses in Title VII actions, frustrating the statute's purpose to "ensure . . . that investigators will have access to the unchilled testimony of witnesses." Glover v. S.C. Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999).

Similarly, Title VII protects Martin's truthful statements to Bisanar and Cobb in February and May because Martin made those statements during the County's internal investigation in preparation for its defense in the Harris suit. See Clover v. Total Systems Servs., Inc., 176 F.3d 1346, 1353 (11th Cir. 1999). It is of no moment that the content of Martin's statements--i.e., his recounting of his conversation with Skidmore--arguably neither described an incident of sexual harassment nor bore any relevance to the Harris suit. In Glover, we held that the phrase "in any manner" in the participation clause is "a clear signal that the

provision is meant to sweep broadly" to include even unreasonable and irrelevant activity. 170 F.3d at 414; see also Deravin v. Kerik, 335 F.3d 195, 203 (2d Cir. 2003) ("[T]he explicit language of [the] participation clause is expansive and seemingly contains no limitations."); Clover, 176 F.3d at 1353 ("The words 'participate in any manner' express Congress' intent to confer exceptionally broad protection upon employees covered by Title VII." (internal quotation marks omitted)). Title VII protects Martin's truthful statements, regardless of their content, because they took place during a meeting that was directly related to a Title VII proceeding.[2]

Martin's lie to Bisanar and Cobb is, however, more troublesome. Although Glover can be read to protect all dishonest conduct, we recognize that Title VII is not meant to "arm employees with a tactical coercive weapon that may be turned against the employer as a means for the asserted victims to advance their own

---

[2]Notwithstanding the County's suggestion, Crowley v. Prince George's County, 890 F.2d 683 (4th Cir. 1989), and Balazs v. Liebenthal, 32 F.3d 151 (4th Cir. 1994), do not support its contrary argument. In neither Crowley nor Balazs did the underlying case (the equivalent of the Harris suit here) involve an actual Title VII investigation, proceeding, or hearing in which the retaliation-plaintiff could participate. In Crowley, 890 F.2d at 687, the underlying matter involved racial discrimination outside of the employment context and thus not covered by Title VII. In Balazs, 32 F.3d at 158-59, the underlying matter involved a charge of discrimination that we held did not state a Title VII claim. Here, by contrast, Martin's truthful statements to Bisanar and Cobb were made in the context of an underlying matter--the Harris suit-- that indisputably stated a Title VII discrimination charge.

retaliatory motives and strategies." <u>Spadola v. N.Y. City Transit Auth.</u>, 242 F.Supp.2d 284, 292 (S.D.N.Y. 2003). For this reason, we would be reluctant to conclude that an employer can <u>never</u> dismiss an employee for lying during a Title VII investigation, proceeding, or hearing. <u>Cf.</u> <u>Mattson v. Caterpillar, Inc.</u>, 359 F.3d 885, 892 (7th Cir. 2004). Martin's lie, however, may have resulted from intimidation by his employer and be so trivial in context as to be protected by Title VII. We need not resolve this difficult issue because even assuming that Title VII does not protect this lie, the County cannot prevail. Martin presented at trial evidence sufficient to demonstrate that his protected conduct (namely, his calls to Roberts and his truthful statements to Bisanar and Cobb), not his lie, caused the County to discharge him--even if we assume that Jones, not other County officials, was the ultimate decisionmaker here.[3]

We note that both parties phrase their arguments on this point as a question of whether Martin presented a prima facie case under the pretext test of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792

---

[3]An employer will not be liable under Title VII for the decisions of just any employee with supervisory or managerial powers. Rather, Title VII only imposes liability if the retaliatory animus of an actual decisionmaker--<u>i.e.</u>, "the person who in reality makes the decision"--motivated the contested employment action. <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 290-291 (4th Cir. 2004) (en banc). Martin claims that several County employees--including Skidmore, Jacobsen, and Cobb--"in reality" made the decision to fire him. The County insists that only Jones was the actual decisionmaker. For purposes of this appeal, we assume that the County is correct.

(1973), or the mixed motive test of <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). In fact, such an "approach is inapposite when a trial has proceeded to completion" and the appeal is based on a denial of a motion for judgment as a matter of law. <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 645 (4th Cir. 2002). In this latter situation, the question on appeal is simply "whether the plaintiff was the victim of intentional discrimination." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 153 (2000).

In this case, a reasonable jury could have concluded from the evidence presented at trial that an impermissible retaliatory animus at least partially motivated Jones to terminate Martin's employment. Jones testified that he reviewed a number of documents prior to deciding to discharge Martin. From reading these documents, Jones certainly knew about Martin's protected conduct, and Jones made his decision to discharge Martin "at the first opportunity" after learning about this protected conduct. <u>Price v. Thompson</u>, 380 F.3d 209, 213 (4th Cir. 2004). In doing so, Jones overturned the Employee Review Panel's decision, an action that a jury could find was at odds with the County's policy of treating decisions on discrimination matters as "final and binding." Furthermore, a jury could conclude that Jones acted inconsistently by retaining Holland (the defendant in the Harris suit), who had lied about attending a mandatory assistance program, while firing

Martin.[4] A decisionmaker's inconsistent action in violation of well-established policy, rendered at the first opportunity after becoming aware of protected conduct, provides sufficient evidence for a reasonable jury to conclude at the very least that some consideration of this protected conduct played a role in the contested employment decision.

Under the Price Waterhouse framework, the County could still avoid liability by showing that Jones would have terminated Martin even without the improper retaliatory motivation. Jones ostensibly fired Martin because Martin had admitted lying to Bisanar and Cobb about whether he had initiated contact with Roberts. However, the record reveals evidence from which a reasonable jury could certainly conclude that Martin's dishonesty, standing alone, would not have led to his termination. Viewing the evidence in the light most favorable to Martin, County policy did not require immediate dismissal for lying, and the County's examples of other employees who had been terminated due to dishonesty were not analogous, primarily because none of them had had their terminations reversed by an Employee Review Panel. A jury could also have turned again to the County's more lenient treatment of Holland's lies. Finally, a jury could determine that given Jones's responses on cross-

---

[4]We also note that during the County's initial investigation into Harris's sexual harassment claim, it concluded that Holland had lied about whether he had mistreated Harris. Notwithstanding this dishonesty, counsel for the County informed us at oral argument that Holland continues to be employed by the County today.

-13-

examination, his testimony that Martin's lie alone led to the discharge was simply not credible. All of this evidence could lead a reasonable jury to find that the County did not have a strong policy of dismissal for dishonesty, and that Jones fired Martin only because Martin had also engaged in protected conduct.[5]

B.

In addition to its Title VII claims, the County makes two evidentiary objections, which it maintains require us to vacate the judgment against it. We review a district court's evidentiary rulings for abuse of discretion. United States v. Leftenant, 341 F.3d 338, 342 (4th Cir. 2003).

First, the County objects on relevance grounds to the admission of the Employee Review Panel's decision and the transcript of its proceedings. "[R]elevance typically presents a low barrier to admissibility." Leftenant, 341 F.3d at 346. Here, Jones admitted reading and relying on the Panel's decision before he decided to terminate Martin. The decision is thus probative as

---

[5]The County also argues that Martin cannot show causation because he has failed to meet his employer's legitimate expectations and because he has failed to show disparate treatment. However, these arguments conflate elements from different prima facie cases. "[T]he elements of a prima facie case differ depending on the statute and the nature of the claim." Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000). An employer's legitimate expectations and disparate treatment are relevant for discriminatory discharge, not retaliation. See King v. Rumsfeld, 328 F.3d 145, 149-50 (4th Cir. 2003); Taylor v. Va. Union Univ., 193 F.3d 219, 234 (4th Cir. 1999) (en banc).

-14-

to Jones's motivation for terminating Martin. Furthermore, the Panel's decision was necessary for Martin to demonstrate that Jones had violated County policy by overruling the decision. As for the transcript of the Panel's proceedings, although Jones did not read the transcript, it confirms the factual basis behind the Panel's decision. We thus find no error in the district court's admission.

Second, the County objects on hearsay grounds to the admission of Roberts's testimony about Cobb's statement in October 2000 that the County would terminate Martin. Even if Roberts's testimony is hearsay, we find its admission harmless. The description of Cobb's statement occupied only a few minutes of testimony among several days of witnesses, and counsel for the County engaged in an able cross-examination on Roberts's recollection and characterization of Cobb's statement. In addition, Martin presented substantial additional evidence concerning Jones's improper motivation. The district court did not abuse its discretion here.

C.

Finally, the County argues that the award of damages to Martin--$100,000 after the remittitur--was excessive. The County "bears a hefty burden in establishing that the evidence is not sufficient to support the award[]. . . . [I]f there is evidence on which a reasonable jury may return verdicts in favor of [Martin],

we must affirm." Price v. City of Charlotte, 93 F.3d 1241, 1249-50 (4th Cir. 1996).

We find sufficient evidence to support the damage award. Both Martin and his wife specifically described the emotional distress and concrete physical symptoms he suffered in response to his termination. Furthermore, although Martin did not seek counseling or request medication, he did present evidence that he had adjusted his lifestyle in an attempt to alleviate his distress. See Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 547 (4th Cir. 2003). Martin's physical and emotional distress was reasonable considering his sudden and ignominious dismissal after nearly three decades of continuous employment with the County. See id. (noting that Bryant's "emotional distress was a reasonable reaction to this mystifying frustration of her professional career"). We find no error in his reduced damage award.

III.

A.

On cross-appeal, Martin first argues that the district court acted improperly by reducing his request for back pay and denying his request for front pay. We review the district court's rulings regarding back pay and front pay for abuse of discretion. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 651 (4th Cir. 2002). The district court based its rulings primarily on its

finding that Martin had failed to mitigate his damages, and that with reasonable diligence he could have found comparable work of roughly equal pay within three years after his termination. The record reveals that Martin applied to a very limited number of jobs and ended up working for only brief periods of time in the years following his termination.

Martin maintains that the district court improperly placed upon him the burden of showing mitigation. It is well established that the employer bears the burden of proving the employee's failure to mitigate. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995). "[T]he duty to mitigate damages requires that the claimant be reasonably diligent in seeking and accepting new employment substantially equivalent to that from which he was discharged." Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985). The question here is whether an employer bears the burden of showing the existence of comparable work if it meets its burden of showing lack of reasonable diligence. Although we have not yet ruled on this issue, "[o]ther courts of appeals . . . uniformly have relieved the defendant-employer of the burden to prove the availability of substantially equivalent jobs in the relevant geographic area once it has been shown that the former employee made no effort to secure suitable employment." Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 16 (1st Cir. 1999) (citing

cases). We see no reason to modify this rule under the circumstances of this case.

## B.

Martin argues next that the district court improperly reduced his request for attorneys' fees and costs. A district court's award of attorneys' fees is "reversed on appeal only if under all the facts and circumstances [the award] is clearly wrong." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1359 (4th Cir. 1995) (quoting Johnson v. Hugo's Skateway, 974 F.2d 1408, 1418 (4th Cir. 1992) (en banc)).

Martin makes three arguments on this point. Martin primarily faults the district court for not calculating a "lodestar" amount. We find no merit to this claim. A court calculates a lodestar figure "by multiplying the number of reasonable hours expended times a reasonable rate." Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998) (quoting Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986)). The district court's post-trial memorandum opinion demonstrates that it performed this exact calculation.

Second, Martin contends that the district court erred by not expressly relying on the twelve-factor test in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). However, the district court's analysis was consistent with several Johnson factors; we do not believe that the district court must invoke

Johnson by name. Furthermore, although the district court did not consider all twelve Johnson factors, we do not believe that the twelve factors must all be considered in each and every case. See Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983) ("The district court also may consider other factors identified in Johnson . . . ." (emphasis added)); Trimper v. City of Norfolk, 58 F.3d 68, 74 (4th Cir. 1995) (describing factors as "general standards" (quoting Daly v. Hill, 790 F.2d 1071, 1079 (4th Cir. 1986))).

Finally, Martin argues that the district court's award improperly relied on the fact that Martin did not prevail on all of his original claims. But the district court here did not improperly base its award of fees and costs "simply on the ratio of claims raised to claims prevailed upon." Brodziak, 145 F.3d at 197.[6] Rather, the court properly recognized that "[w]hen successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter." Id. at 197. Martin's unsuccessful claims were not based on the same "core of facts" as his successful claims. Johnson, 974 F.2d at 1419. We thus find no error in the district court's award of attorney's fees and costs.

---

[6]Indeed, although Martin prevailed on only one-fourth of his trial claims (and an even smaller proportion of his original claims), the district court still compensated his counsel for two-thirds of her work.

-19-

IV.

For the foregoing reasons, we affirm the district court's denial of the County's motions for judgment as a matter of law and for a new trial. We also affirm the district court's rulings as to back pay, front pay, and attorneys' fees and costs. In sum, the judgment of the district court is affirmed in all respects.

<u>AFFIRMED</u>