**Anthony R. STROUD, Plaintiff,**

v.

**TYCO ELECTRONICS, Defendant.**

**No. 1:05CV404.**

United States District Court,
M.D. North Carolina.

June 27, 2006.

Romallus O. Murphy, Greensboro, NC, for Plaintiff.

James B. Spears, Jr., Ogletree Deakins Nash Smoak & Stewart, P.C., Charlotte, NC, for Defendant.

## JUDGMENT

TILLEY, District Judge.

On June 5, 2006, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. No objections were filed within the time limits prescribed by Section 636.

Therefore, the Court need not make a de novo review and the Magistrate Judge's Recommendation is hereby adopted.

IT IS THEREFORE ORDERED AND ADJUDGED that defendant's motion for summary judgment (docket no. 30) is granted, and that this action be, and the same hereby is, dismissed.

## ORDER AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

### Facts and Claims

The facts of this case are largely undisputed for purposes of defendant's motion for summary judgment which is now before the Court. Defendant is a global corporation with headquarters in Harrisburg, Pennsylvania, that manufactures electrical components for other industries. (Def.motion, attach.A, p. 1) Defendant has a manufacturing operation in Turkey. (Id.) Plaintiff was employed by defendant as a mechanic at its manufacturing facility located in Greensboro, North Carolina ("the PTP facility") until his termination in late June 2004. (Id., attach. B–1, pp. 54, 58, 66) At the time of his termination, plaintiff was working in the "MODU" group as an acting group leader. (Id., attach. B–1, p. 68)

On June 24, 2004, plaintiff asked his co-worker Tracie Johnson to show him how to send an e-mail message on the company's computer. (Id., attach. E) She showed plaintiff how to bring up the format for a new e-mail on his computer, and then returned to her work area. (Id.) Plaintiff told her he was going to make something up for an e-mail and send it to her. (Id.)

Plaintiff drafted a message to Tracie Johnson with a "CC:" line which read "Turkey–All Users." (Def. motion, attach. D & attachs. A and B to attach. D) This meant that the e-mail went to all Tyco employees in Turkey. (Id., attach. D, p. 3) The subject line of the e-mail message read "TURKEY SHOOT" and the content of the message was "I PLAN TO SHOOT ALL TURKEYS. ...."[1] (Id., attach. B to attach. D)

1. Plaintiff states in his affidavit that he typed     as the content of the message "I can shoot all

On June 25, 2004, Amy Wimmersberger, Manager of Computer Security for Tyco Electronics Corporation, was contacted by Jan Aarts, an employee of Tyco's computer systems department in Europe, regarding the questions of a Tyco employee in Turkey about this email from plaintiff. (Def.motion, attach.D, p. 2) Ms. Wimmersberger confirmed that the e-mail was sent from plaintiff's assigned computer account and that he and Ms. Johnson worked at the company's PTP facility. (*Id.*, attach. D, pp. 2–3) She then contacted Deborah Miller, Tyco Electronics Human Resources Advisor at the PTP facility and forwarded a copy of the message to her. (*Id.*, attach D, p. 3) Ms. Miller met with plaintiff and his team leader about the e-mail, and plaintiff admitted sending the e-mail. (*Id.*, attach. C, pp. 21–22)

Brian Cain, Director of Human Resources for the GIC division of Tyco Electronics, reviewed the e-mail and interpreted it as a threat of violence and violative of several company policies. (Def.motion, attach.A, pp. 1–2) He decided that employment termination was appropriate for plaintiff. (*Id.*) His decision was based solely on the e-mail. (*Id.*) Mr. Cain who was in Harrisburg directed the PTP Human Resources Advisor, Deborah Miller, to inform plaintiff of the decision. (*Id.*) Ms. Miller informed plaintiff "that the decision had been made to terminate" him. (*Id.*, attach. C, p. 41) She told plaintiff that the decision was made "out of the building." (*Id.*)

After his termination, plaintiff called defendant's 1–800 ConcernLine, and the call was sent to Mr. Cain for a response. (Def.motion, attach.A, p. 4) Plaintiff thought that Ms. Miller had made the decision to terminate him, but Mr. Cain informed plaintiff that he had made the decision and that plaintiff would not be rehired. (*Id.*)

Plaintiff shows that Ms. Miller on June 25 wrote an e-mail message to her boss, Larry Rohrbach, and Charles Post regarding plaintiff's e-mail message in which she noted the results of her review of plaintiff's file including that he had sued defendant twice for discrimination, one of which was settled in 1983, and that notes were in the file "relating to his accusations of harassment by authority figures, assignments he doesn't agree with, him being treated unfairly, etc." (Pl.response, ex. 5) Ms. Miller ended the message by writing that plaintiff "obviously has a problem with authority." (*Id.*) Plaintiff filed a charge of discrimination with the EEOC on October 29, 2004, alleging discrimination based on race, retaliation, and age. (*Id.*, ex. 1) Plaintiff also shows that Ms. Miller told the Employment Security Commission, which was investigating plaintiff's termination, that she "discharged plaintiff" by phoning him and telling him that "it had been decided that he was to be terminated from employment." (*Id.* ex. 6)

▮ Plaintiff states in his pro-se Complaint that he was terminated because of his complaints and suffered harassment, retaliation and acts of discrimination. (Complaint, p. 2) Defendant filed an Answer denying the allegations. (Answer) The parties have filed a stipulation of partial voluntary dismissal which dismisses with prejudice plaintiff's claims made under the Age Discrimination in Employment Act. (Stipulation) Defendant has also

turkeys" and that he has no knowledge how the message got to Turkey or how it came to be "formulated" as it was. (Pl. response, attached affidavit, pp. 1–2) Ms. Johnson, the message recipient, states in her affidavit that the message was "I PLAN TO SHOOT ALL TURKEYS." (Def.motion, attach.E, p. 2) This difference in wording is not material to the outcome of this case.

filed a motion for summary judgment. (Def.motion) Plaintiff has filed a Response. (Pl.response) In the Response, plaintiff withdraws his race discrimination claim. (*Id.* pp. 4–5) Defendant has filed a reply to plaintiff's response. (Def.reply) Defendant has also filed a motion to strike portions of plaintiff's affidavit and certain exhibits accompanying plaintiff's response.[2] (Def. motion to strike) Plaintiff has responded to this motion. (Pl.response) The motions are now ready for ruling. Due to the parties' stipulation and plaintiff's concession in his Response, the only claim remaining is the retaliation claim. (Pl.response, pp. 3–4)

### Legal Standard

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the nonmoving party. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* "The summary

judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. *Pachaly*, 897 F.2d at 725.

### Discussion

Section 704 of Title VII, makes it unlawful for an employer to discriminate against its employees on certain bases such as because he has opposed any practice made unlawful by that subchapter or because he has made a charge or participated in an investigation or hearing under that subchapter. 42 U.S.C.A. § 2000e–3 (2003). Plaintiffs seek to prove this unlawful retaliation by either the use of the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or, if they have direct evidence of the retaliation, by relying on this direct evidence. Plaintiff claims to have direct evidence of retaliation, and therefore is not relying on the *McDonnell Douglas* mode of analysis. (Pl.response, pp. 3–4)

▮ Plaintiff's burden is to show that his protected activity actually played a role

---

**2.** Defendant's motion to strike portions of plaintiff's Response relates to plaintiff's Employment Security Commission hearing. (Motion to strike) Defendant contends that references to the ESC hearing in plaintiff's affidavit and the attached exhibits relating to that hearing should be stricken because N.C. Gen.Stat. § 96–4(t)(5) establishes an absolute privilege which forecloses a party's reliance upon ESC matter in subsequent Title VII litigation. In his Response to this motion, plaintiff concedes that the paragraph of his affidavit referring to a finding of the ESC hearing and the exhibit consisting of the Commis-

sion's opinion should be stricken. (Response, p. 3) The court agrees that this paragraph and exhibit should be stricken along with the paragraph of plaintiff's affidavit which recounts Ms. Miller's testimony during the ESC hearing and the exhibit purporting to be a transcript of the ESC hearing. *See Hartsell v. Duplex Prods., Inc.*, 895 F.Supp. 100 (W.D.N.C.1995). The remainder of the motion to strike pertaining to the Internet article will be denied. As will become clear, these stricken sections are not material to the Court's decision in any event.

in the employer's decisionmaking process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see Martin v. Mecklenburg Co.,* 151 Fed.Appx. 275, 280 (4th Cir.2005) (applying *Reeves* in retaliation case). Statements made by persons other than the decisionmaker or those made by decisionmakers but unrelated to the decisional process do not satisfy this burden. *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 286 (4th Cir. 2004) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring)). Central to this analysis is the identification of the decisionmaker in a particular case. The Fourth Circuit has stated that to survive a summary judgment motion, the plaintiff who claims that a subordinate employee was the decisionmaker must "come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." *Hill,* 354 F.3d at 291. This will present major problems for plaintiff's claim.

Next, plaintiff fails to state exactly which protected activity he is alleging that defendant retaliated for by terminating his employment. In his Response, he speaks of the citation by Ms. Miller of his "EEOC filing, and his alleged complaints about harassment." (Response, p. 2) Plaintiff is apparently referring to an EEOC charge filed by him in 1998. (Def.motion, attach.B–1, p. 44) Plaintiff has not shown any protected activity since that date. He had no complaints against his managers in the MODU department where he worked from December 2002 until his termination. (Def.motion, attach.C, p. 68) Accordingly, the Court will consider the 1998 EEOC charge as the basis for the alleged retalia-

tion. As will be seen, this fact will also present major problems for plaintiff.

■ Plaintiff claims that the decisionmaker in his case was Deborah Miller, the Human Resources Advisor at the PTP facility where he worked. (Pl.response, p. 3–4) He relies on the fact that she investigated the incident and that she stated during the Employment Security Commission hearing that she discharged him. (*Id.* p. 2) However, the Court has stricken that evidence. Also, plaintiff relies upon Ms. Miller's e-mail of June 25 to Rohrbach and Post which discusses her review of his employment file which included the prior EEOC charge plaintiff had made. (*Id.* p. 4)

Defendant contends that it was Mr. Cain, and not Ms. Miller, who was the decisionmaker in this case and that plaintiff has failed to show that Mr. Cain was influenced by plaintiff's prior EEOC charge. (Def.memo., pp. 14–16) The undisputed material evidence supports defendant's position.

There is no dispute that Ms. Miller was a subordinate of Mr. Cain who was the Human Resources Director for the entire division in which plaintiff worked. Under *Hill,* to survive this summary judgment motion plaintiff must therefore present sufficient evidence that Ms. Miller had such authority that she could be viewed as the one principally responsible for the decision or the actual decisionmaker. Defendant has shown by the affidavit of Mr. Cain that he was the actual decisionmaker. (Def.motion, attach.A) Even were the Court to consider the stricken statement by Ms. Miller during the employment commission hearing that she discharged plaintiff, this is not inconsistent with Mr. Cain having made the decision and then telling Ms. Miller to effectuate the decision. It is undisputed that Ms. Miller informed plaintiff of Mr. Cain's decision. She told plain-

tiff when she relayed the information that the decision was made "out of the building," in other words not by her. This is also what Mr. Cain told plaintiff. Plaintiff's evidence does not show otherwise.

With respect to the e-mail evidence, plaintiff does not show that Ms. Miller wielded such authority that she could be viewed as the decisionmaker. It is undisputed that she investigated the circumstances surrounding the e-mail. Yet, there is no evidence that she made any recommendation to Mr. Cain regarding plaintiff's employment status. Even if plaintiff had shown that Ms. Miller influenced the decision, which he has not done, this would not be sufficient to establish liability. *Hill*, 354 F.3d at 291. The evidence from the affidavit of Mr. Cain is that he made the decision based solely on plaintiff's e-mail message and company policies prohibiting misconduct. (Def.motion, attach.A) In sum, the evidence overwhelmingly shows that Mr. Cain was the decisionmaker in plaintiff's case and plaintiff's evidence does not show otherwise.

█ The question then becomes whether plaintiff has produced sufficient evidence upon which one could find that his previous protected activity actually played a role in Mr. Cain's decision and had a determinative influence on the outcome. *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097. Plaintiff has failed to produce any evidence that Mr. Cain's decision was influenced in any way by plaintiff's prior protected activity. The e-mail written by Ms. Miller was not addressed to Mr. Cain, and there is no evidence that he saw it. His affidavit shows that plaintiff's prior protected activity did not influence his decision.

This conclusion that plaintiff's earlier charge of discrimination did not affect the decision to terminate his employment is bolstered by several facts unique to this case. First, plaintiff's protected activity occurred some six years prior to his dis-

charge. If plaintiff were proceeding by way of the burden-shifting analysis, this length of time between the events would prevent him from making a prima facie case. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998) (13 months interval between charge and termination too long to establish causation). Also, during these intervening years plaintiff's employment was going very well. Defendant had named him acting group leader. Plaintiff had received his highest work rating after his transfer to the MODU department, and he referred to his superiors there as being "excellent guys to work for." (Def.motion, attach.B–3, p. 253) His promotion, albeit temporary, and his favorable performance evaluation show that the earlier charge was not being held against plaintiff.

For all these reasons, defendant's motion for summary judgment should be granted on plaintiff's retaliation claim. Plaintiff has withdrawn his race discrimination claim, therefore judgment should also be awarded to defendant on this claim. Finally, the parties have stipulated to a dismissal with prejudice of plaintiff's age discrimination claim. The Court accepts this stipulation and that claim should be considered to be dismissed.

**IT IS THEREFORE ORDERED** that objections to the Recommendation are due June 12, 2006 and responses to objections must be filed or before June 19, 2006.

**IT IS FURTHER ORDERED** that defendant's motion to strike (docket no. 41) be granted in part and denied in part.

**IT IS RECOMMENDED** that defendant's motion for summary judgment (docket no. 30) be granted, and that Judgment be entered dismissing this action. June 5, 2006.