Lydia E. GLOVER, Plaintiff–Appellant,

v.

SOUTH CAROLINA LAW EN-
FORCEMENT DIVISION,
Defendant–Appellee.

No. 98–1130.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1998.

Decided March 9, 1999.

**ARGUED:** Marilyn Lynette Hudson, An-
drews & Hudson, P.C., Knoxville, Tennessee,
for Appellant. Vance J. Bettis, Gignilliat,
Savitz & Bettis, Columbia, South Carolina,

for Appellee. **ON BRIEF:** A. James Andrews, Andrews & Hudson, P.C., Knoxville, Tennessee, for Appellant.

Before WILKINSON, Chief Judge, KING, Circuit Judge, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded by published opinion. Chief Judge WILKINSON wrote the majority opinion, in which Judge KING joined. Judge WILLIAMS wrote a dissenting opinion.

## OPINION

WILKINSON, Chief Judge:

After she was discharged for her deposition testimony in a federal employment discrimination suit, Lydia Glover sued her employer, the South Carolina Law Enforcement Division (SLED), for retaliation under section 704(a) of Title VII. The district court granted summary judgment to SLED, reasoning that Glover's conduct was not within the participation clause of section 704(a) because she testified unreasonably in her deposition. We hold that the participation clause shields even allegedly unreasonable testimony from employer retaliation, and we therefore reverse the judgment of the district court.

### I.

SLED hired Lydia Glover as a police captain in June 1994. Upon her hire Glover became the second-in-command to Major Jim Martin in SLED's Criminal Justice Information and Communications Systems (CJICS) section. Despite this relatively senior position, Glover had to complete a twelve-month probationary period before she became a permanent SLED employee.

Glover and Martin spent much of Glover's probationary term at daggers drawn. Martin criticized Glover for inferior work, for missing deadlines, and for failing to learn the operational aspects of CJICS. In March 1995 Glover wrote a memorandum to SLED Chief Robert Stewart criticizing Martin's management style and suggesting that he be moved to a different work location. Glover's memo-

randum described Martin as "moody, unpredictable, and overly critical" as well as "authoritarian and dictatorial." Sensing that their relationship had badly deteriorated, Chief Stewart asked Glover and Martin to enter mediation.

At about the same time, Glover received a notice of deposition for a Title VII action that had been filed in the United States District Court for the District of South Dakota. Jane Koball, a deputy marshal in South Dakota, had sued the United States Marshals Service for gender discrimination. Glover's connection to the case came from her own years in the Marshals Service—immediately before SLED hired her, Glover had been the United States Marshal for the District of South Carolina. During her nine-year career in that office she had served as chair of the Marshals Service Equal Employment Opportunity Advisory Committee and had met and counseled Koball.

Glover's deposition lasted the entire day of April 3, 1995. Her testimony was open and wide-ranging. With minimal prompting from the government's deposing attorney, Glover freely offered not only facts directly related to Koball's problems with the South Dakota marshals office, but also her impressions of the operations of the South Carolina marshals office. In particular, Glover perorated upon the perceived failings of her successor as the South Carolina U.S. Marshal, Israel Brooks. During the course of her testimony Glover accused Brooks of mismanagement, destruction of office documents, wasting funds, inappropriate behavior, dishonesty, and discrimination.

The parties offer different explanations for Glover's testimonial attack on Marshal Brooks. Glover asserts that she was merely responding to the questions of the deposing attorney. SLED, on the other hand, argues that Glover went out of her way through irrelevant and unresponsive answers to malign and disparage Brooks and other members of his office. In any event, the subject of Brooks and the state of the South Carolina marshals office occupies nearly one hundred pages of the 268-page deposition transcript.

Brooks eventually learned of Glover's deposition testimony and complained to SLED Chief Stewart. After reading the deposition transcript, Stewart reprimanded Glover for her testimony.

On June 16, 1995, Stewart informed Glover that he would not be retaining her after the expiration of her probationary period. Stewart cited three reasons for his decision. Two stemmed from the quality of her work during the first ten months of her tenure: first, that she had not developed an appropriate level of knowledge for her position, and second, that her priorities were inconsistent with those of the organization. Stewart's third criticism was that Glover's performance in her deposition had demonstrated poor judgment.

Stewart later admitted that he did not fire Glover solely for her job performance. Instead, he acknowledged that "the deposition caused [him] to go back and rethink the whole issue," that he "took the deposition into consideration," and that the deposition testimony "tipped the balance in favor of firing."

Glover filed discrimination and retaliation charges against SLED with the South Carolina Human Affairs Commission and with the Equal Employment Opportunity Commission (EEOC). Both agencies issued right-to-sue letters. Glover then filed this retaliatory discharge claim in the United States District Court for the District of South Carolina. On SLED's motion for summary judgment, the district court found that Glover had been terminated because of her deposition testimony. The court also found, however, that the specific testimony that led to Glover's termination was not protected "participation" under section 704(a), since it was "unresponsive, uncompelled, and gratuitous." The district court therefore granted SLED's motion. Glover appeals, and we reverse.

## II.

Section 704(a) of Title VII forbids retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). This provision has two parts: the opposition clause and the participation clause.

A plaintiff makes out a prima facie case of retaliation by showing that she engaged in a protected activity, that she suffered an adverse employment action, and that the two were causally related. *Ross v.Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). It is plain from the record that Glover suffered an adverse employment action and that there was a causal connection between that action and her deposition testimony. It is also plain that testifying in a deposition in a Title VII case generally constitutes protected activity under section 704(a)'s participation clause.[1] In the absence of a legitimate, nondiscriminatory explanation for Glover's termination, our inquiry would normally be at an end.

SLED contends, however, that an employee's conduct is only protected participation if that conduct is "reasonable." To determine reasonableness, SLED asks us to import a balancing test into the participation clause. SLED finds guidance in our application of section 704(a)'s opposition clause. To determine whether conduct is protected opposition activity "[w]e balance the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998) (internal quotation marks omitted). Because Glover's attacks on Marshal Brooks and his team

---

1. Although SLED argues that Glover did not include a participation clause claim in her EEOC complaint and hence cannot present such a claim here, the EEOC complaint cites retaliation and refers to SLED's criticism of Glover's deposition testimony. Because a claim under the participation clause would "naturally have arisen from an investigation" of these charges, this claim is properly before us. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995); *see also Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981).

were irrelevant to Koball's Title VII claim, SLED contends that her behavior was unreasonable and that it fails this balancing test. Under SLED's rationale, Glover's testimony thus does not constitute protected "participation."

We are willing to assume for the purposes of this case that Glover's testimony was unreasonable. SLED still cannot prevail. Reading a reasonableness test into section 704(a)'s participation clause would do violence to the text of that provision and would undermine the objectives of Title VII.

The plain language of the participation clause itself forecloses us from improvising such a reasonableness test. The clause forbids retaliation against an employee who "has made a charge, testified, assisted, or participated in any manner" in a protected proceeding. 42 U.S.C. § 2000e–3(a). Glover was fired because she "testified" in a Title VII deposition. The term "testify" has a plain meaning: "[t]o bear witness" or "to give evidence as a witness." *Black's Law Dictionary* 1476 (6th ed.1990).

■ Moreover, those who testify in Title VII proceedings are endowed with "exceptionally broad protection." *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1006 n. 18 (5th Cir.1969). "The word 'testified' is not preceded or followed by any restrictive language that limits its reach." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11thCir.1997). In fact, it is followed by the phrase "in any manner"—a clear signal that the provision is meant to sweep broadly. *Id.; see also United States v. Wildes*, 120 F.3d 468, 470 (4th Cir.1997)("'[A]ny' is a term of great breadth."), *cert. denied*, —— U.S. ——, 118 S.Ct. 885, 139 L.Ed.2d 873(1998). Congress could not have carved out in clearer terms this safe harbor from employer retaliation. A straightforward reading of the statute's unrestrictive language leads inexorably to the conclusion that all testimony in a Title VII proceeding is protected against punitive employer action.

This conclusion is consistent with the purpose of the participation clause: "Maintaining unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 848, 136 L.Ed.2d 808 (1997). Section 704(a)'s protections ensure not only that employers cannot intimidate their employees into foregoing the Title VII grievance process, but also that investigators will have access to the unchilled testimony of witnesses. "Activities under the participation clause are essential to the machinery set up by Title VII." *Laughlin*, 149 F.3d at 259 n. 4(internal quotation marks omitted). If a witness in a Title VII proceeding were secure from retaliation only when her testimony met some slippery reasonableness standard, she would surely be less than forth-coming. It follows that the application *vel non* of the participation clause should not turn on the substance of the testimony. *See Merritt*, 120 F.3d at 1185–89 (participation clause applies even where witness does not testify for the purpose of assisting the claimant); *see also Ross*, 759 F.2d at 357 n. 1 (antiretaliation provision applies even where underlying discrimination claim was not meritorious). "A protected activity acquires a precarious status if innocent employees can be discharged while engaging in it, even though the employer acts in good faith." *Pettway*, 411 F.2d at 1005 (internal quotation marks omitted). Congress has determined that some irrelevant and even provocative testimony must be immunized so that Title VII proceedings will not be chilled. It is not for this court to overturn that judgment.

This interpretation would not lead, as SLED contends, to an absurd result. Our holding does not permit employees to immunize improper behavior simply by filing an EEOC complaint. "[A]n EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice." *Brown v.Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir.1977). Employers retain, as they always have, the right to discipline or terminate employees for any legitimate, nondiscriminatory reason. *See, e.g., Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1390–91 (8th Cir.1988) (upholding dismissal of employee for past conduct and for an "abusive attempt" to have a witness change her story). We merely hold, in accordance with the statute's specific text, that an employer may not

fire an employee because of her testimony in a Title VII proceeding.[2]

In fact, to adopt a reasonableness restriction would lead the federal courts into a morass of collateral litigation in employment discrimination cases. With her immunity limited by a reasonableness requirement, a witness might be forced to evade or to refuse to answer deposition questions. And those questions can be wide-ranging—Rule 26 of the Federal Rules of Civil Procedure requires only that "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). The inevitable clashes between inquisitive deposing attorneys and recalcitrant witnesses will spawn discovery motions and appeals, all to be litigated in the courts. The resulting waste of individual and judicial resources would be far inferior to a system in which discovery proceeds unfettered, with witnesses confident that they cannot be punished for telling their tales.

Our good colleague in dissent fails to address the broad wording of the statute. Instead, the dissent subscribes to a nebulous rule of reason which, while it may seem clear in this case, will be anything but clear in the long line of cases to come. The statute permits an employee to be discharged for a wide variety of deficiencies in performance, but it does not subject an employee's testimony in a Title VII suit to the uncertain limbo of an employer's perception of its reasonableness.

The case law that SLED cites, and upon which the district court relied, does not support a contrary result. First, SLED points to those cases that apply a balancing test to determine whether activity is protected by section 704(a)'s opposition clause. *See, e.g., Laughlin,* 149 F.3d at 259–60; *Douglas v. DynMcDermott Petroleum Ops. Co.,* 144 F.3d 364, 370 n. 7, 373–74 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999). But "the scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause." *Laugh-*

*lin,* 149 F.3d at 259 n. 4. This is because of the opposition clause's different text—the ambiguous term "oppose" has the potential to include a wide range of informal activity ranging from petitions to "militant self-help." *Hochstadt v. Worcester Found. for Experimental Biology,* 545 F.2d 222, 230–31(1st Cir. 1976). Consequently, courts have applied a balancing test to distinguish between protected opposition and unprotected obstreperousness. *See id.; Armstrong v. Index Journal Co.,* 647 F.2d 441, 448(4th Cir.1981). But as we have noted, the text of the participation clause is unambiguous and specific. Testifying in a Title VII proceeding is plainly protected participation—the clause neither requires nor allows further balancing.

SLED also cites a number of cases upholding adverse action against employees who had engaged in protected participatory activity. A careful reading of those cases, however, reveals that the adverse actions were predicated on legitimate, nondiscriminatory reasons and not on the protected activity itself. *See, e.g., Jackson,* 840 F.2d at 1390–91 (claimant's abuse of a potential witness and use of significant company resources are not protected); *Jones v. Flagship Int'l,* 793 F.2d 714, 726–29 & n. 14 (5th Cir.1986) (claimant's encouragement of other employees to file claims and join a separate class action suit against the employer is not protected). In these cases the employee's conduct, although related to protected activity, was distinct and separable from that activity.

SLED argues that we should similarly separate the manner in which Glover testified in her deposition from the protected act of testifying. But the judgment Glover displayed under questioning and her testimony itself "are so inextricably related ... that they cannot be considered independently of one another." *Womack v. Munson,* 619 F.2d 1292, 1297 (8th Cir.1980). To dissect Glover's deposition in this fashion would be to slice things much too thinly. In essence, SLED's argument is an attempt to bring through the back door the reasonableness

---

2. The question of whether an EEOC complaint must be filed in good faith to warrant protection under section 704(a) is not before us. *SeeWide-*

*man v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1455 (11th Cir.1998).

requirement for Title VII testimony that we have already rejected.

## III.

Because Glover was discharged in violation of the clear mandate of Title VII, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WILLIAMS, District Judge, dissenting:

It cannot be gain said, at least in my opinion, that the Title VII action for gender discrimination filed by Jane Koball in the district court in South Dakota had anything to do with the professional competence, character, or integrity of South Carolina U.S. Marshal Israel Brooks, or the U.S. Marshal Service in South Carolina. Glover was selected to be deposed in the Koball case solely because of her knowledge of some of the allegations and her past position on the EEO Advisory Committee. Thus, when Glover commenced to attacking Brooks for approximately two and a half hours, she was no longer participating in the investigation of Koball's allegations of discrimination. Instead, she was commenting on matters clearly outside the purview of the Title VII proceeding, and as such, exceeding the scope of protection offered by the participation clause. [1] Accordingly, I respectfully dissent.

While I understand the majority's concern that reading a reasonableness standard into the participation clause could create some chilling effect on Title VII proceedings, I am constrained to dissent because I do not believe that the participation clause was meant to shield testimony that has no relation to the

matter in issue, nor sup-ports any fact to be proved. *See* Fed.R.Evid. 401. Although the participation clause has not been subject to the same reasonableness standard as the opposition clause, neither the wording nor legislative history of § 704(a) make it clear as to how far Congress meant to immunize hostile and disruptive employee activity when it declared it unlawful for an employer to take adverse employment action against employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a); *see Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230 (1st Cir. 1976). However, "certain broad premises can be accepted with confidence." *Hochstadt,* 545 F.2d at 230. Congress surely did not intend to give asylum to employees to gratuitously disparage and maliciously accuse their peers of professional misconduct having nothing whatsoever to do with the underlying charge of discrimination, simply because the comments were made during a deposition in a Title VII proceeding. "Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers." *Jackson v. St. Joseph State Hosp.,* 840 F.2d 1387, 1391 (8th Cir.1988), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

However, despite the lack of a reasonableness standard, there is case law that suggests the protective ambit of the participation clause is not absolute. In *Jackson v. St. Joseph State Hosp.,* a supervisory employee was accused of sexually harassing a subordinate employee. 840 F.2d 1387. In response, the supervisory employee filed re-

---

1. During the deposition, following some preliminary questions, the government attorney asked Glover how long she served as chair person of the EEO Advisory Committee for the USMS. Glover responded:

> I would have to check with headquarters and find out with that. There were records and documents on all of this that were retained and filed here at the Marshals Office. *When Marshal [Israel] Brooks took over, its my understanding that he had all of the records from my administration destroyed, taken to Fort Jackson and burned in the incinerator.*

(J.A. at 30) (emphasis added). It was at this point that the deposition,which was supposed to only address the allegations of the Title VII action filed by Koball, focused on the USMS administration under Brooks. For approximately the first one hundred pages of the 268 page deposition transcript, Glover accused Brooks, among other things, of destroying official records, mistreating employees, and being dishonest and a liar.

verse discrimination charges with the Equal Employment Opportunity Commission (EEOC). Upon learning that the EEOC was conducting its investigation, he then attempted to coerce the employee who brought the original harassment claim into dropping her claim and testifying that she lied. Consequently, the supervisor was fired for his conduct. On appeal, the Eight Circuit held that his termination was valid because it was for attempting to force another employee to lie, rather than in retaliation for his reverse discrimination claims. *Id.* at 1390. The court agreed with the district court's finding that the supervisor's conduct of trying to pressure a witness to testify on his behalf in a Title VII proceeding was so "bizarre" as to remove him from the participation clause's protection. *Id.* Thus, the fact that the supervisor was participating in an investigation under Title VII, albeit in a highly offensive and disruptive manner, did not bar his proper termination. *See also Learned v. City of Bellevue,* 860 F.2d 928, 932 (9th Cir.1988) ("The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination, however, does not automatically trigger the protection afforded under section 704(a)"); *Jones v. Flagship International,* 793 F.2d 714, 727 (5th Cir.1986) (recognizing that § 704(a)'s protections may be denied to an employee whose activities adversely affect his effective performance of job duties).

Here, Stewart explained that one of the driving forces behind his termination of Glover was her "problem exercising the judgment which should be exercised by a captain at SLED." (J.A. at 394–95.) Stewart felt that Glover's "completely unnecessary attack of Marshal Brooks and others in his office"

further exemplified her poor judgment and inability to handle the position. *Id.* His decision to terminate Glover, however, was not predicated on her participation in a Title VII proceeding, any testimony she gave with regard to the underlying allegations, or her taking part in the prosecution of such charges.

None of the remedial purposes of Title VII and its participation clause were contravened by Stewart's decision. *See Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005 (5th Cir.1969). Thus, to recognize Glover's claim would be to authorize retaliation actions under Title VII for any adverse employment action taken by an employer so long as the employee "testified, assisted, or participated in any manner" in another's Title VII proceeding, despite the fact that the grounds for the adverse action had nothing to do with the substance of the underlying charges.[2]

As such, I do not believe that the prophylactic nature of the participation clause was meant to be stretched to such limits. *See e.g. EEOC v. Kallir, Philips, Ross, Inc.,* 401 F.Supp. 66, 72 (S.D.N.Y.1975)(recognizing that under some circumstances an employee "assisting"or "participating" in a Title VII proceeding "may be so excessive and so deliberately calculated to inflict needless economic hardship on the employer that the employee loses the protection of section 704(a)"). Nevertheless, I do recognize that the enforcement of Title VII rights is necessarily dependent on an employee's complaints, and the freedom to present those grievances without the threat of retaliatory conduct by employers who may resent that they are charged with discrimination.[3] *See*

2. Even within the plain meaning of the term "testify," Glover was not providing "evidence as a witness for the purpose of establishing or proving some fact" in Koball's Title VII action during those some one hundred pages of the deposition transcript. *Black's Law Dictionary* 1476(6th ed.1990).

3. However, I am not even sure if Stewart's conduct was retaliatory. Glover's testimony, at best, could have only implicated the defendant U.S. Marshal Service. Since SLED does not stand accused in the Koball proceeding, it is difficult to conceive how it can be seen as retaliating against

Glover. Thus, Glover does not run the same risks that a person assisting a co-worker, who brings a discrimination claim against their joint employer, may have. *See e.g. Smith v. Columbus Metropolitan Housing Authority,* 443 F.Supp. 61, 64 (S.D.Ohio 1977) ("To permit employers to accumulate exculpatory evidence during the prehearing phase by wielding the control they exercise over employees' job security certainly violates the spirit of Title VII, which contemplates that allegations of discriminatory employment practices will be litigated before the appropriate agencies and courts, not before the supervisory staff of the respondent employer.").

*Pettway,* 411 F.2d at 1007. However, there must be some sense of reason in any statutory scheme. Thus, the participation clause must be tempered, as the majority noted, by an employer's right to discipline an employee for any legitimate, nondiscriminatory reason. *See LaFond v. General Physics Services Corp.,* 50 F.3d 165, 174 (2d Cir.1995) (ruling that employer's discharge of employee because he exhibited poor judgment was a legitimate, nondiscriminatory reason).

In my opinion, Glover's insubordinate and unprofessional conduct that inappropriately manifested itself during a Title VII proceeding was not protected activity, nor should her conduct "be countenanced by the salutory purposes set forth in Title VII." *Jackson,* 840 F.2d at 1391. The participation clause may be broad, but it is not boundless. Accordingly, I would affirm the judgment of the district court.