**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2543**

PATRICIA VILLA,

        Plaintiff – Appellant,

    v.

CAVAMEZZE GRILL, LLC; CAVAMEZZE GRILL MOSAIC, LLC,

        Defendants – Appellees,

    and

CAVA GROUP, INC.,

        Defendant.

---------------------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION; U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:15-cv-00222-TSE-MSN)

Argued:  March 21, 2017              Decided:  June 7, 2017

Before MOTZ, TRAXLER, and AGEE, Circuit Judges.

---

Affirmed by published opinion. Judge Traxler wrote the opinion, in which Judge Motz and Judge Agee joined.

---

**ARGUED**: Matthew B. Kaplan, THE KAPLAN LAW FIRM PLLC, Arlington, Virginia, for Appellant. Sarah Catherine Crawford, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. David Barmak, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., Washington, D.C., for Appellees. **ON BRIEF**: Dennis Corkery, Christine Tschiderer, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Appellant. Alta M. Ray, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., Washington, D.C., for Appellees. Stephen Z. Chertkof, HELLER, HURON, CHERTKOF & SALZMAN, PLLC, Washington, D.C.; Erik D. Snyder, PASSMAN & KAPLAN, P.C., Washington, D.C.; Alan R. Kabat, BERNABEI & KABAT, PLLC, Washington, D.C., for Amicus Metropolitan Washington Employment Lawyers Association. P. David Lopez, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, Anne W. King, Office of General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus United States Equal Employment Opportunity Commission.

---

TRAXLER, Circuit Judge:

Patricia Villa appeals a district court order granting summary judgment against her in her Title VII retaliation case against CavaMezze Grill, LLC, and CavaMezze Grill Mosaic, LLC (together, "Cava" or "the employer"). Finding no error, we affirm.

I.

CavaMezze Grill, LLC ("CMG") is a Maryland limited-liability company and the parent company of several restaurants, each of which is owned and operated by a wholly owned subsidiary of CMG. CavaMezze Grill Mosaic, LLC ("Mosaic") is a Virginia limited-liability company and wholly owned subsidiary of CMG that owns and operates the Cava Mezze Grill restaurant located in Merrifield, Virginia.

Rob Gresham was CMG's Director of Operations and oversaw the operations of each restaurant, including the Merrifield restaurant. Sergio Valdivia was Cava's Area Manager and managed a total of five restaurants, including the Merrifield restaurant.

Villa began working at Cava in the spring of 2012. In October 2013, she was a low-level manager for Mosaic, and she reported directly to Mosaic's General Manager, Marcelo Butron.

On October 28, 2013, Villa called Gresham and reported that Judy Bonilla, a former line-level Mosaic employee whom she had sometimes supervised, had told Villa that Butron had offered to give Bonilla a raise in exchange for sex. Villa told Gresham that this conversation occurred in the presence of Osmar Marinero, another Mosaic employee. During her conversation with Gresham, Villa told Gresham that she also

3

suspected that Jessica Arias, another former Mosaic employee, had left Mosaic because Butron made Arias a similar offer.

Gresham informed Villa that he would investigate the allegations. He informed Bret Schulman, Cava's Chief Executive Officer, of Villa's report, and Schulman instructed him to investigate the allegations by speaking to the people involved.

Gresham subsequently met with Bonilla at a restaurant. Because Bonilla spoke Spanish but little English, Valdivia was also present and he translated for Gresham. When Gresham asked Bonilla why she had left Mosaic, Bonilla responded that she left for a better paying job. When he asked whether she left because Butron told her he would only give her a raise in exchange for sex, Bonilla denied that that occurred. Bonilla also denied making the statements that Villa had reported.

Gresham spoke to Arias by phone. During the conversation, Arias explained that she left Mosaic because she lived far away. When asked specifically whether she left because Butron offered to give her a raise in exchange for sex, Arias laughed, denied that Butron made such an offer, and added that whoever told Gresham that was lying.

Gresham also informally spoke with Marinero, who told Gresham that Bonilla left Mosaic "for more money" and Arias left because her "family[ was] crazy." J.A. 77. He denied knowing anything about either of them leaving because of sexual harassment from Butron.

As a result of his investigation, Gresham concluded that Villa had made up the allegations. Gresham met with Villa and Butron on November 5, 2013, and explained to Villa that he had spoken with Bonilla and Arias and they both had denied that Butron had

4

offered them a raise in exchange for sex, and that as a result, he determined that Villa made a false report regarding Butron. Gresham informed Villa that her employment was terminated. Villa told Gresham she was sorry but did not deny fabricating the report.

Villa subsequently filed a retaliation complaint with the Fairfax County, Virginia, Office of Human Rights, which was cross-filed with the federal Equal Employment Opportunity Commission ("EEOC"). The Office of Human Rights did not reach the merits of the issue, and Villa received a right-to-sue letter. She then filed suit in federal district court, alleging Title VII retaliation.

In her deposition for this case, Bonilla changed her story and acknowledged that Villa had in fact accurately reported their conversation, and she claimed that she had lied to Gresham when she told him otherwise. Bonilla also testified that although she had *told* Villa that Butron offered to give her a raise for sex, Butron, unbeknownst to Villa, never actually made such an offer.

Following discovery, Cava moved for summary judgment, contending that even if it had incorrectly concluded that Villa had fabricated her allegation, Cava's termination of her for the fabrication did not constitute Title VII retaliation. Cava maintained that it was undisputed that its conclusion that Villa had made up her allegations was Cava's true reason for terminating Villa and not a pretext for retaliatory animus. Cava pointed to paragraph 43 of its statement of undisputed facts in its memorandum supporting summary judgment, which stated in relevant part:

> Since Ms. Arias and Ms. Bonilla denied the allegations about Mr. Butron, and denied that they have ever made the allegations to Ms. Villa, Mr. Gresham concluded that Ms. Villa made up the allegations. As a result,

5

> Mr. Gresham decided to terminate Ms. Villa's employment for fabricating the report against Mr. Butron.

J.A. 32-33. In Villa's response to Cava's asserted undisputed facts, Villa specifically did "not dispute the assertions in th[at] paragraph." J.A. 189.

Although conceding that Cava's conclusion that she fabricated the report was the true reason she was terminated, Villa argued that because she acted in good faith when she made her complaint to Gresham, her termination constituted illegal retaliation, regardless of what Cava honestly believed. In fact, she maintained that Cava's admission that it terminated her for her report of Bonilla's allegations was direct evidence of retaliatory animus, rendering irrelevant the *McDonnell Douglas* burden scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Villa alternatively argued that there was a genuine factual dispute regarding whether Cava's investigation was reasonably thorough.

The district court rejected Villa's arguments and concluded that Villa had failed to create a genuine factual dispute concerning whether Cava's desire to retaliate against her was the but-for cause of her termination. The court also reasoned that Villa "ha[d] conceded that her termination would have occurred regardless of the presence or absence of retaliatory animus." J.A. 404. The court concluded that the fact that Villa, unbeknownst to her employer, actually had *not* fabricated her conversation with Bonilla could not be a basis for Title VII liability, nor could any lack of thoroughness by Cava in investigating Villa's misconduct.

6

## II.

Villa contends that the district court erred in granting summary judgment against her on her Title VII retaliation claim. We disagree.

"We review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *T–Mobile Ne., LLC v. City Council of Newport News*, 674 F.3d 380, 384–85 (4th Cir. 2012) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Title VII makes it illegal for "an employer to discriminate against any of his employees . . . *because* [the employee] has opposed any practice made an unlawful employment practice by" Title VII "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a) (emphasis added). The first part of this statute is known as the "opposition clause," while the second is the "participation clause."

Under either clause, since the statute only prohibits an employer from discriminating "because" the employee has engaged in a certain type of conduct, "Title VII retaliation claims require proof that *the desire to retaliate* was the but-for cause of the challenged employment action." *University of Tx. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (emphasis added); *see Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 246, 252 (4th Cir. 2015) ("*Nassar* . . . held that a successful

retaliation plaintiff must prove that retaliatory animus was a but-for cause of the challenged adverse employment action."). Because Title VII prohibits discrimination only when it results from particular, enumerated motivations, "when an employer articulates a reason for discharging the plaintiff" that the statute does not proscribe, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted); *see also id.* (explaining that it is not our role to sit "as a kind of super-personnel department weighing the prudence of employment decisions") (internal quotation marks omitted).

That an employer must act out of "the desire to retaliate" in order to incur liability does not mean that the employer must act *maliciously*. *See Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001) (ADEA). But because the statute's focus is the employer's subjective motivation for the action, the facts the decision-maker actually perceived matter. If an employer, due to a genuine factual error, never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware.[1] *See Dowe v. Total*

---

[1] Citing *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), and *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the EEOC argues in an amicus brief that, in determining whether a termination constituted Title VII retaliation, courts should consider whether the employer's action "might have dissuaded a reasonable worker" from reporting harassment. *Burlington N.*, 548 U.S. at 68 (internal quotation marks omitted). However, the EEOC fails to recognize that the cases it cites applied that standard in the context of determining "the level of seriousness to which [the harm produced by the employer's action] must rise before it becomes actionable retaliation." *Burlington N.*, 548 U.S. at 67; *see Thompson*, 562 U.S. at 174. Since the (Continued)

8

*Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("[B]y definition, an employer cannot take action because of a factor of which it is unaware.").

A.

The opposition clause does not protect the making of a knowingly false allegation. *See Richey v. City of Independence*, 540 F.3d 779, 785 (8th Cir. 2008); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000); *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1268 (5th Cir. 1992). Rather, for an employee's report of information purportedly relating to a Title VII violation to be protected under the opposition clause, the employee must subjectively believe that the facts she is reporting are true. *Cf. Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003) (applying Title VII retaliation standard in Title VI context and holding that an allegation is protected only if the employee subjectively believes that a Title VII violation has occurred or is ongoing and the employee's subjective belief is objectively reasonable); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) ("[A] complainant must allege the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA."). In light of the subjective-belief requirement, an employee who complains of conduct that she knows did not actually occur is not "oppos[ing] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a); *see Gilooly v. Missouri Dep't of Health and Senior Servs.*, 421 F.3d 734, 741-45 (8th Cir. 2005)

seriousness of the harm from the employment action is not at issue in this case, that standard does not apply.

9

(Colloton, J., concurring in part and dissenting in part). She is, at most, *pretending* to oppose such conduct. Thus, firing an employee for knowingly fabricating an allegation relating to a Title VII violation does not run afoul of the opposition clause. *See Richey,* 540 F.3d at 785; *Total Sys. Servs., Inc.*, 221 F.3d at 1176; *Wilson*, 973 F.2d at 1268.

Citing *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir. 1969), Villa argues that the participation clause protects false statements made in bad faith, and she suggests that "similar logic applies to cases under the opposition clause." Appellant's Brief at 18 n.9. But Villa is incorrect in asserting that similar logic applies. *See Total Sys. Servs., Inc.*, 221 F.3d at 1175 (explaining that "[e]ven if false statements made in the context of an EEOC charge (per the participation clause) are protected and cannot be grounds for dismissal or discipline, this extreme level of protection for untruth is not afforded to false statements made under the opposition clause" (citation omitted)); *see id.* at 1175-76 (explaining the policy justifications for protecting knowingly false statements made during conduct protected by the participation clause and not protecting knowingly false statements under the opposition clause). As our court has explained, "the text of the participation clause is unambiguous and specific." *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 415 (4th Cir. 1999). It prohibits discrimination because an employee "has made a charge, testified, assisted, or participated in any manner" in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). And on this basis, we have held that firing someone for testifying in a Title VII deposition is plainly prohibited, regardless of whether the testimony is unreasonable. *See Glover*, 170 F.3d at 414-15.

10

We have noted, however, that the opposition clause presents wholly different issues.[2] *See id.* at 415. In contrast to the participation clause's protection of specific activities such as "testifying," the opposition clause's language protecting the "oppos[ing of] any practice made an unlawful employment practice by" Title VII is much more general. *See id.* Accordingly, in contrast with our handling of the <u>participation</u> clause, "[t]o determine whether an employee has engaged in legitimate opposition activity we employ a balancing test" weighing "the purpose of the Act to protect persons engaging reasonably in activities opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (alteration and internal quotation marks omitted); *see also Glover*, 170 F.3d at 415 (distinguishing opposition clause cases).

That the balancing of these interests does not justify protecting knowingly fabricated allegations should hardly come as a surprise. Engaging in knowing fabrications certainly does not amount to "engaging reasonably in activities opposing . . . discrimination"; and precluding employers from taking any action against employees who have engaged in such deceit obviously would create enormous problems for employers who would be forced to retain dishonest or disloyal employees. *Cf. Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause . . . was

_____

[2] Similarly, in holding that the opposition clause does not protect knowing fabrications, the Fifth Circuit distinguished the very participation clause case on which Villa relies. *See Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1268 (5th Cir. 1992) (distinguishing *Pettway*).

11

not intended to immunize insubordinate, disruptive, or nonproductive behavior at work. An employer must retain the power to discipline and discharge disobedient employees." (citations omitted)).  Neither Villa nor amici have cited any case holding that the opposition clause protects employees' pretending to oppose Title VII violations by intentionally fabricating allegations, and we are not aware of any.

B.

Villa primarily argues that her firing constituted Title VII retaliation because it was based on a factual error.  Namely, she maintains that she actually did accurately report her conversation with Bonilla – which would be protected conduct – and Cava simply misjudged the facts in concluding that she made it up.  She maintains that because there are genuine factual disputes regarding this issue, summary judgment was improper. We disagree.

As we have explained, to prove that her termination violated Title VII, Villa had to show that her employer was motivated by a desire to retaliate against her for engaging in conduct that the opposition clause protected.  *See Nassar*, 133 S. Ct. at 2528; *Foster*, 787 F.3d at 246, 252.  When it fired Villa, Cava did not know Villa had engaged in any protected conduct.  Because its investigation led it to conclude in good faith that Villa had simply made up her conversation with Bonilla, Cava's reason for terminating her was necessarily *not* retaliatory.  *See Dowe*, 145 F.3d at 657.  Whether the termination decision "was wise, fair, or even correct" is immaterial.  *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted).  If Villa was fired for misconduct she did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII

12

violations are made. *See Richey,* 540 F.3d at 785 ("[W]hen an employer is presented with a 'he said, she said' set of facts involving two employees," and the employer disbelieves the employee and disciplines her, the employer is not liable so long as it "took the adverse action because of a good faith belief that the employee made false accusations."); *Total Sys. Servs., Inc.*, 221 F.3d at 1176 ("When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? When the resulting employer's investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice.").[3]

---

[3] Villa relies on *Gilooly v Missouri Department of Health and Senior Services*, 421 F.3d 734 (8th Cir. 2005), in arguing that employers commit Title VII retaliation when they fire employees for fabricating reports of Title VII violations when the evidence of the misconduct is not clear cut. But the primary issue in *Gilooly* concerned how clear the employer's evidence of the employee's fabrication must be in order to entitle the employer to judgment as a matter of law on the issue of whether the employee's dishonesty was the employer's true reason for acting. *See Richey*, 540 F.3d at 784-85; *Gilooly*, 421 F.3d at 740-41. That question does not arise in this case because Villa concedes lack of pretext.

Villa also observes that under section 8(a)(1) of the National Labor Relations Act, employers can be liable for illegal retaliation for firing employees for engaging in misconduct during protected activity if the employers were mistaken in concluding that the misconduct had occurred. *See, e.g.*, *NLRB v. Industrial Cotton Mills*, 208 F.2d 87, 91-92 (4th Cir. 1953). Villa's reliance on the law concerning section 8(a)(1) of the NLRA is misplaced because, unlike in Title VII cases, plaintiffs need not establish retaliatory animus in 8(a)(1) cases in order to prevail. *See id.* at 91. Moreover, even under section 8(a)(1), plaintiffs must prove that the employer was actually aware of the facts constituting the employee's engagement in protected conduct, something Villa could not do in light of her concession that her employer fired her for fabricating her conversation with Bonilla. *See NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21, 23 (1964) (Continued)

13

Villa, as well as amici, EEOC and the Metropolitan Washington Employment Lawyers Association, argue that limiting retaliation liability under Title VII to cases in which the employer was actually motivated by a desire to retaliate is inconsistent with *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271 (2009), and *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), cases which Villa characterizes as "mandat[ing] that the anti-retaliation provisions be interpreted so as to encourage reporting of discrimination." Appellant's Brief at 20. Because conniving employers will often be able to act with retaliatory animus and then disguise their true motivation, Villa and amici maintain that requiring all employees to prove retaliatory animus does not serve the goal of encouraging employees to take the risk of coming forward with information. We agree with Villa and amici to the extent they assert that employees coming forward place themselves in a precarious situation, and fear of such retaliation can discourage reports of illegal conduct. *See Crawford*, 555 U.S. at 279 ("[F]ear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination." (internal quotation marks omitted)). However, we do not agree with their characterization of *Burlington Northern* and *Crawford*. While these cases certainly favor liberally *interpreting* the statute to

(Section 8(a)(1) of the NLRA "is violated if it is shown that the discharged employee was at the time engaged in a protected activity, that the employer knew it was such, that the basis of the discharge was an alleged act of misconduct in the course of that activity, and that the employee was not, in fact, guilty of that misconduct."); *see Medeco Sec. Locks, Inc. v. NLRB*, 142 F.3d 733, 747 (4th Cir. 1998) ("[A]n employer's antiunion motivation is not a required element of § 8(a)(1).").

14

further the goal of encouraging employees to come forward, *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 283 (4th Cir. 2015) (en banc), they do not favor *rewriting* a statute that conditions liability on the existence of a retaliatory motive. *See Puerto Rico v. Franklin Calif. Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016) ("[O]ur constitutional structure does not permit this Court to rewrite the statute that Congress has enacted." (internal quotation marks omitted)). Taking Villa and amici's argument to its logical conclusion, *Burlington Northern* and *Crawford* would "mandate" that all employees who have reported any Title VII violation must be granted permanent immunity from any adverse action taken by an employer for any reason in the future, which would surely encourage even more reporting of discrimination. But even Villa and amici do not argue that that course is justified.

## C.

Villa also argues that there is a genuine dispute of fact regarding the reasonableness of Cava's investigation into whether Villa fabricated her conversation with Bonilla.[4] This argument fails for the same reasons that Villa's argument concerning

---

[4] In arguing that courts should look beyond the facts that the employer actually perceived, Villa analogizes her Title VII retaliation claim to a First Amendment retaliation claim, wherein "courts look to the facts as the employer reasonably found them to be." *Waters v. Churchill*, 511 U.S. 661, 677 (1994) (plurality opinion) ("[W]e have often held various laws to require only an inquiry into the decisionmaker's intent . . . but . . . this has not been our view of the First Amendment."). Regardless of the law applicable to First Amendment cases, however, Title VII does not allow that approach; rather, plaintiffs must prove that the employer's desire to retaliate motivated the employer to take the challenged action. *See University of Tx. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013); *Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 246, 252 (4th Cir. 2015).

whether Cava made a mistake of fact fails; namely, that when an employer has acted for a reason that the statute does not prohibit, we do not judge the correctness, fairness, or wisdom of the employer's decision. *See DeJarnette*, 133 F.3d at 299. While evidence of an obviously inadequate investigation into the employee's misconduct could tend to show that claimed employee misconduct was actually a pretext for prohibited animus, *see, e.g.*, *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014), such evidence is of no help to Villa in this case since Villa has conceded that her employer's reason for firing her was not pretextual.

III.

For the foregoing reasons, we conclude that the district court properly granted summary judgment against Villa, and we therefore affirm.

*AFFIRMED*