**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1039

CATHERINE D. NETTER, an individual,

Plaintiff - Appellant,

v.

SHERIFF BJ BARNES, in his official and individual capacity,

Defendant - Appellee,

and

GUILFORD COUNTY SHERIFF'S OFFICE, a North Carolina public entity,

Defendant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:15-cv-00843-CCE-JEP)

Argued: October 10, 2018                      Decided: November 15, 2018

Before GREGORY, Chief Judge, MOTZ and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Chief Judge Gregory and Judge Diaz joined.

**ARGUED:** Wilson Frank Fong, HENSEL LAW, PLLC, Greensboro, North Carolina, for Appellant. James Marion Powell, WOMBLE BOND DICKINSON (US) LLP, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Craig Hensel, HENSEL LAW,

PLLC, Greensboro, North Carolina, for Appellant.  Sonny S. Haynes, Ethan C. Goemann, WOMBLE BOND DICKINSON (US) LLP, Greensboro, North Carolina, for Appellee.

———————

DIANA GRIBBON MOTZ, Circuit Judge:

Catherine D. Netter brings this appeal, arguing that her unauthorized review and disclosure of confidential personnel files to support her racial and religious discrimination claims constituted protected activity under Title VII. Netter contends that the district court erred in rejecting her argument and granting summary judgment to her employer. For the reasons that follow, we affirm.

I.

Netter, a Black and Muslim woman, worked for the Guilford County Sheriff's Office for approximately nineteen years, most recently as a detention services supervisor. For more than sixteen years, Netter compiled an unblemished disciplinary record. That changed in April 2014, when she received a disciplinary sanction that barred her from testing for a promotion. Netter filed timely complaints with Guilford County Human Resources and the Equal Employment Opportunity Commission. She alleged that similarly situated officers, who were neither Black nor Muslim, had not been similarly disciplined.

Following up on Netter's complaint, an investigator from the county Human Resources office asked her if she had evidence to support her discrimination claims. In response, Netter reviewed, copied, and supplied the investigator with the confidential personnel files (which she maintained in a file cabinet in her shared office) of two subordinate employees whom she supervised at Greensboro Jail Central. Netter also provided the investigator with the personnel files of three other employees who worked at

the High Point Detention Center, which she obtained through a personal request to a co-worker. Netter acknowledges that she knew the files were confidential but nonetheless did not seek permission from the five employees or her own supervisors to copy and disclose them.

Netter additionally gave copies of all five files to the Equal Employment Opportunity Commission and the lawyer representing her in this suit. In response to a pretrial discovery request, Netter's counsel provided copies of the files to defendant BJ Barnes, the Sheriff of Guilford County. This led the Sheriff's attorneys to inquire how Netter obtained the files. In deposition testimony, Netter admitted that she had acted as outlined above.

On these facts, a professional standards officer in the Sheriff's office recommended Netter's termination on three grounds. First, the officer concluded that Netter violated department policy restricting the unauthorized review, duplication, and dissemination of these records. Second, he believed that she failed to conform to the work standards established for her position. Third, he asserted that Netter had violated state law — namely, N.C. Gen. Stat. § 153A–98, which imposes criminal penalties for reviewing or disseminating information in county personnel files without authorization, subject to exceptions inapplicable here. Netter appealed to Sheriff Barnes, who upheld the recommendation and discharged her.

Netter filed a new charge with the EEOC, contending that the Sheriff fired her for engaging in activity protected under Title VII. When the EEOC dismissed the charge, the

4

parties agreed to allow Netter to supplement her existing Title VII discrimination complaint with the new retaliation claim.

After discovery concluded, the district court granted summary judgment to Sheriff Barnes on all claims, including Netter's allegations of discrimination and her claims of retaliation. Netter timely filed this appeal, in which she challenges only the portion of the district court's order that concerns her retaliation claim.

## II.

Title VII of the Civil Rights Act of 1964 bars employers from discriminating on the basis of "race, color, religion, sex, or national origin." Pub. L. No. 88–352, § 703, 78 Stat. 241, 255 (1964) (codified as amended at 42 U.S.C. § 2000e–2(a)). Section 704(a) of the Act expressly prohibits retaliation by an employer against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (codified as amended).[1]

This antiretaliation provision has the critical purpose of maintaining "unfettered access" to Title VII's "statutory remedial mechanisms" for addressing discrimination.

---

[1] Netter also presses an antiretaliation claim under 42 U.S.C. §§ 1981 and 1983. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (interpreting § 1981 to encompass retaliation claims). Because § 1981 "affords no greater substantive protection than Title VII" in the circumstances here, our analysis of Netter's claim "also disposes of the § 1981 claim." *N.Y.C. Transit Auth. v. Beazer*, 440 U.S. 568, 583 n.24 (1979).

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Because "Title VII depends for its enforcement upon the cooperation of employees," the Supreme Court has held that the scope of protected activity under § 704(a) should be interpreted broadly to "ensure the cooperation upon which accomplishment of the Act's primary objective depends." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

Section 704(a) shields from retaliation two categories of activity: *participation* and *opposition*. The statute's participation clause provides absolute protection to a limited range of conduct. It protects "participat[ion] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Given the clear directive inherent in the phrase "in any manner," the clause protects participation activities even when they are plainly "unreasonable" or "irrelevant." *Glover v. S.C. Law Enf't Div.*, 170 F.3d 411, 414 (4th Cir. 1999); *see also Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 n.4 (4th Cir. 1998) (noting that the participation clause provides "broader" protection than the opposition clause because "[a]ctivities under the participation clause are essential to the machinery set up by Title VII" (internal quotation marks omitted)).

Section 704(a) additionally bars retaliation for "oppos[ition] [to] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). This clause provides qualified protection to a wide range of conduct. *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 277–78 (2009) (holding that protected opposition activity need not be "active" or "consistent"). In contrast to the participation clause, the opposition clause contains no limitation to proceedings "under

6

this subchapter."  But the opposition clause also lacks the participation clause's express protection for "any manner" of conduct.  Instead, for an employee's activity to constitute protected "opposition," she must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation, *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc), and (2) that her conduct in opposition was reasonable, *see Laughlin*, 149 F.3d at 259–60.

For both participation and opposition claims, the plaintiff bears the burden of establishing that unlawful retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  This but-for causation requirement is stricter than the "lessened causation standard" for discrimination claims, *id.*, under which a plaintiff need only show that "race, color, religion, sex, or national origin was a motivating factor" for an adverse action by an employer, 42 U.S.C. § 2000e–2(m).

Finally, when pursuing any claim under Title VII, a plaintiff can prove her case either "through direct and indirect evidence of retaliatory animus," or through a burden-shifting "pretext" framework.  *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).  In the context of a retaliatory discharge, this means an employee may proceed by showing directly that she was fired in retaliation for protected activity, or by proving that any non-retaliatory justification for the firing was pretextual.  The choice is "left to the plaintiff's discretion."  *Id.*

7

With these principles in mind, we turn to the case at hand. Notwithstanding the Sheriff's apparent belief that Netter pursues a pretext claim, Netter has opted to proceed on a direct-evidence theory.[2] Because the parties do not dispute the facts, the sole issue before us is whether Title VII protects Netter's conduct against retaliation. Netter principally argues that her entire course of conduct constituted protected "participation" activity under the antiretaliation protections of Title VII and related statutes. Alternatively, she asserts that her review and disclosure of files to the county Human Resources investigator constituted protected "opposition" activity.

We can quickly dispose of Netter's alternative argument. Under the opposition clause, unauthorized disclosures of confidential information to third parties are generally unreasonable. *See, e.g.*, *Laughlin*, 149 F.3d at 260 ("easily conclud[ing]" under opposition clause that "employer's interest in maintaining security and confidentiality of sensitive personnel documents outweigh[ed]" employee's interest in providing them to former co-worker); *Jefferies v. Harris Cty. Comm. Action Ass'n*, 615 F.2d 1025, 1036–37 (5th Cir. 1980) (holding disclosure of personnel records and agency documents unprotected as opposition in light of employer's "legitimate and substantial interest" in confidentiality). Netter attempts to justify her conduct on the basis that she reasonably believed the county investigator had a right to access employee personnel files. Even if she is correct as to the *disclosures*, however, Netter's *review* of the files, which she

---

[2] We note that the outcome of this case does not turn on whether Netter relied on burden-shifting or direct evidence.

lacked permission to access for this purpose, falls decidedly outside the scope of reasonable opposition. We are loath "to provide employees an incentive to rifle through confidential files looking for evidence." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (analyzing analogous Age Discrimination in Employment Act provision).

However, the participation clause offers more capacious protection for conduct in connection with Title VII proceedings. Application of the participation clause must account for the evidentiary difficulties many plaintiffs face when pressing claims of workplace discrimination. Absent unusual evidence of overt animus, a plaintiff seeking to prove unlawful discrimination in employment will generally need to produce evidence of comparators, or similarly-situated employees of a different race, color, religion, sex, or national origin who have been treated differently.

Because salaries, disciplinary infractions, and the like often remain confidential, it may be difficult for an employee to realize — let alone prove — that such evidence exists. *See, e.g.*, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 645 (2007) (Ginsburg, J., dissenting) (noting that because pay disparities can accrue in "small increments" "often hidden from the employee's view," "cause to suspect that discrimination is at work develops only over time"), *superseded by statute*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5 (2009). Even after an employee suspects discrimination, her uncertainty and her employer's power over her livelihood may discourage her from "making waves" until "the disparity becomes apparent and sizable." *Id.*

9

Of course, once an employee recognizes potential discrimination and files a charge with the Equal Employment Opportunity Commission, the agency may investigate the claim and issue subpoenas. *See, e.g.*, *EEOC v. Shell Oil Co.*, 466 U.S. 54, 63–64 (1984) (outlining EEOC's investigatory powers, including "authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas") (citing 42 U.S.C. §§ 2000e–8(a), 2000e–9). But an employee has no power to subpoena evidence herself, nor to review the evidence that the EEOC gathers. If the EEOC dismisses the charge and the employee files a civil suit stating a valid claim for relief, the employee may gather evidence through civil discovery mechanisms — but still, the employee must know what to request. We therefore will not read the participation clause so narrowly as to improperly limit an employee's ability to gather evidence for a bona fide Title VII claim.

That said, we cannot conclude that Netter's unauthorized inspection and copying of the personnel files constituted protected participation activity for a straightforward reason. She violated a valid, generally-applicable state law. Netter does not meaningfully dispute that these actions, standing alone, violated N.C. Gen. Stat. § 153A–98(f), which establishes a Class 3 misdemeanor for "knowingly and willfully examin[ing] . . . , remov[ing,] or copy[ing] any portion of a confidential personnel file" without authorized access. We have already held in an opposition clause case that "illegal actions" do not constitute "protected activity under Title VII." *Laughlin*, 149 F.3d at 259 n.3. That is also true for participation clause claims.

Netter responds that under the Supremacy Clause, even illegal activities can be protected if the relevant state law conflicts with Title VII. *See* U.S. Const. art. VI, cl. 2;

10

*see also Arizona v. United States*, 567 U.S. 387, 398–400 (2012) (summarizing express, field, and conflict preemption). But this argument presupposes the existence of a conflict between state and federal law, and we see none here.

A state law that expressly or effectively criminalized filing an EEOC charge or pursuing a Title VII suit would undoubtedly be preempted as an obstacle to the enforcement of Title VII. But that is not the law at issue. N.C. Gen. Stat. § 153A–98(f) has the valid and salutary purpose of protecting the personal information of current and former county employees across the state. It neither expressly contradicts Title VII's provisions nor meaningfully impedes a litigant's ability to pursue a Title VII claim. Indeed, in this case, Netter had access to — and utilized — civil discovery procedures without any demonstrated need to unlawfully review or copy confidential personnel information.

Accordingly, we hold that Netter's unauthorized review and duplication of confidential personnel files did not constitute protected opposition or participation activity. Therefore, Netter cannot prevail. For us to reverse, Netter would have to persuade us that "unlawful retaliation would not have occurred in the absence of the alleged wrongful action . . . of the employer." *Nassar*, 570 U.S. at 360. But Sheriff Barnes and his officers expressly and extensively cited Netter's violations of N.C. Gen. Stat. § 153A–98(f) in justifying her discharge. Even assuming the other stated grounds for her discharge are invalid, Netter has not established that she would have remained employed in their absence. To the contrary, the record establishes that Sheriff Barnes would have terminated her solely on the basis of her violation of state law.

11

## IV.

The Sheriff urges us to rule more broadly.  He asks us to hold that any *disclosure* of information in violation of an *employer's* confidentiality policy falls beyond the scope of the participation clause.  This assertedly would be the rule even if the employee had permission to access the information, disclosed it only to the Equal Employment Opportunity Commission in connection with a Title VII proceeding, and did not violate valid state law.  Perhaps implicitly recognizing that providing evidence in an EEOC investigation seems like quintessential "participation" activity, Sheriff Barnes offers two arguments in support of his preferred result.

First, the Sheriff cites the Sixth Circuit's holding that although the "analysis of a participation claim does not generally require a finding of reasonableness, . . . when confidential information is at issue, a reasonableness requirement is appropriate." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 726 (6th Cir. 2008).  Second, the Sheriff points to our reasoning in *Glover* that conduct "related to protected activity" but "distinct and separable from that activity" remains a valid basis for discipline.  170 F.3d at 415.  The Sheriff then relies on a case in which the Tenth Circuit stretched this principle to hold that while disclosure of records to the EEOC constituted protected participation activity, the resultant violation of the employer's confidentiality policy nevertheless constituted a legitimate, non-retaliatory basis for termination.  *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1152–53 (10th Cir. 2008).

We believe *Glover* properly counsels against both of these approaches.  As we carefully explained in that case, the phrase "in any manner" clearly forecloses any

12

reasonableness requirement for participation claims. *Glover*, 170 F.3d at 414. The statutory text remains unchanged today, and we see no basis to create a blanket exception to the *Glover* analysis for cases that happen to implicate employer confidentiality policies. Similarly, the underlying act of disclosing evidence to the EEOC and the employer policy violation that such an act may trigger are "so inextricably related" that following the Tenth Circuit and separating the two would, as we explained in *Glover*, "slice things much too thinly." *Id.* at 415 (internal quotation omitted). Both broad rules suggested by the Sheriff risk eroding the protection afforded by the participation clause, thereby threatening the full employee cooperation on which Title VII depends.[3]

We hold only, as we did in *Laughlin*, that § 704(a) does not protect a violation of a valid state law that poses no conflict with Title VII. Like Laughlin's opposition claim, Netter's participation claim fails: she has not met her burden of proving that Sheriff Barnes terminated her employment because she engaged in protected activity.


V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[3] For similar reasons, it is neither necessary nor prudent to decide in this case whether N.C. Gen. Stat. § 153A–98(e), a provision that criminalizes the disclosure of confidential information *generally*, can validly be applied to prohibit a claimant from disclosing evidence in confidence *to the EEOC* in light of the participation clause.

13